*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-378

SEPTEMBER TERM, 2016

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Ashley Nutbrown-Covey | } | DOCKET NO. 1113-9-13 Wncr |

Trial Judge: Brian J. Grearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals a conviction of perjury following a jury trial, arguing that the trial court committed plain error by not, on its own motion, awarding her judgment of acquittal at the conclusion of the trial based on insufficient evidence to support the conviction. We affirm.

In September 2013, defendant was charged with two counts of perjury, in violation of 13 V.S.A. § 2901, based on allegations that she made false statements regarding material issues in a relief-from-abuse (RFA) proceeding. Specifically, she was accused of submitting false affidavits: in Count 1, alleging that her estranged husband sent her a threatening email; and in Count II, alleging that certain letters, attached to a later affidavit, were authentic. Following an initial mistrial, defendant moved to sever the counts. The motion was granted, and a trial on the first count was held on March 24, 2014. At the close of the State's case, defendant moved for judgment of acquittal, asserting that the State failed to present any evidence that she made a false statement when she was lawfully required to tell the truth. The trial court denied the motion, in part, because in evidence was a partial transcript of the RFA hearing in which defendant testified under oath that she had received the threatening email from her husband, which was the basis for the family division's issuance of a temporary RFA order. Defendant did not renew her motion for judgment of acquittal at the close of evidence or post-trial. The jury convicted defendant, and the trial court sentenced her to sixty days to two years, all suspended except for sixty days. The State dismissed the second count following defendant's conviction on the first count.

On appeal, defendant argues that the trial court committed plain error by not awarding her a judgment of acquittal on its own motion following the close of evidence. See V.R.Cr.P. 29(a) (providing that trial court may, on its own motion, direct a verdict of acquittal "if the evidence is insufficient to sustain [the] conviction"). "A court must move for acquittal by its own motion only when the record reveals that the evidence is so thin that a conviction would be unconscionable." State v. LaFlam, 2008 VT 108, ¶ 4, 184 Vt. 629 (mem.). "No acquittal is required if when the evidence, taken in the light most favorable to the State, and disregarding any modifying evidence, sufficiently and fairly supports a finding of guilt beyond a reasonable doubt." Id.

The State's evidence easily meets that standard here. Defendant's husband testified that: (1) defendant filed several RFA complaints against him following the initiation of divorce proceedings in April 2012; (2) her final RFA complaint was filed in April 2013, while the divorce was still pending, and was based on a threatening email purportedly sent to her by her husband; (3) he did not write the threatening email, which he discovered only after he changed his password and was able to access his account, which defendant had helped him set up; (4) upon seeing the threatening email, he called police to inform them that he did not write it; (5) defendant testified under oath at an April 16, 2013 RFA hearing that he had sent the email to her; and (6) after the temporary RFA order was granted, he asked his divorce attorney to investigate where the email came from.

Defendant's husband's attorney testified that (1) he contacted the husband's email provider's legal department and obtained a copy of the IP logs for the husband's account, which revealed that of the thousands of records only two originated from a Charter Communications, Inc. account in the City of Barre, where defendant was living, and they were both sent on the same day the threatening email was sent; (2) based on this information, he was able to get the RFA order against defendant's husband vacated; and (3) he then contacted the City of Barre police department.

A Barre police detective who took over the investigation to determine whether defendant had committed perjury testified that: (1) he contacted Charter Communications and learned that the IP address in question belonged to defendant; (2) he then interviewed defendant with another detective in the presence of defendant's mother and defendant's roommate; (3) defendant was able to follow the conversation with the detectives; and (4) defendant eventually admitted sending the email to herself, explaining that she did so out of her concern for the welfare of herself and her children. The other detective at the interview testified that defendant did not appear to be intimidated by either detective.

The defense presented two witnesses, defendant's mother and defendant's roommate. Defendant's mother testified that during the interview with the detectives, defendant was on pain medication due to having had an emergency C-section several days earlier, and that the detectives were aggressive and persistent in their questioning of defendant. She also testified that defendant's roommate admitted to her after the interview that she wrote the email. Defendant's roommate testified that she wrote the email for defendant's husband after he called her and threatened her. She was unable, however, to state the time or day when the threat occurred, and she acknowledged testifying at the RFA hearing that she did not believe the email was fabricated.

According to defendant, the overall evidence preponderates heavily against the verdict, and thus the trial court erred by not entering judgment in her favor on its own motion. In support of her argument, she points to the testimony of her mother and her roommate that her roommate sent the email and to the testimony of her mother suggesting that her confession was involuntary. Notwithstanding the testimony of defendant's mother and her roommate, there was substantial evidence, even apart from defendant's confession, indicating that defendant sent the email. In any event, we cannot conclude as a matter of law that defendant's confession was involuntary, see State v. Reynolds, 2016 VT 43, ¶ 14 (noting that ultimate issue of voluntariness of confession is legal question under federal constitution), particularly given that we are reviewing the case under a plain-error standard. Normally, a challenge to a confession occurs in a pretrial motion to suppress, and the trial court determines under the totality of the circumstances whether the confession was involuntary. See e.g., id. ¶¶ 2, 9. Here, defendant did not seek to exclude the confession based on it being involuntary or on any other grounds. This is by no means an obvious

case of a coerced confession. While defendant's mother testified that defendant was on pain killers during the police interview and that the interviewing detective was aggressive and persistent, there was also testimony that defendant's interview was done in the presence of her mother and roommate at her home, that she appeared to be following the questions asked of her, and that she did not appear to be intimidated by the detectives. See id. ¶ 12 (recognizing that police may use psychological tactics to elicit statement from suspect, even where tactics have impact on suspect's decision to talk, as long as resulting statement reflects suspect's balancing of competing considerations). In short, there was ample evidence for a reasonable jury to conclude beyond a reasonable doubt that defendant committed perjury by testifying at the RFA hearing that her husband had sent her the threatening email when she knew that she had sent it to herself. As noted, we must consider the evidence most favorably to the State, disregarding any modifying evidence, and it was within the province of the jury to determine the credibility of the witnesses. See State v. Couture, 169 Vt. 222, 227 (1999) ("We have long recognized that judging the credibility of witness testimony is a duty left to the jury.").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3